# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 4, 2009

Charles R. Fulbruge III
Clerk

No. 07-30530

IN RE: 1994 EXXON CHEMICAL FIRE

VIVIAN ADAM; ANNETTE ADDISON; BRIDGET AKINS; RITA ALET;
CLAY ALEXANDER; ET AL

Plaintiffs-Appellants

v.

THOMAS BERRY; ALLEN HILL; EXXON CHEMICAL HDPE, INC; EXXON
CORPORATION, also known as Exxon Chemical; WILLIAM SENN; YUTI
LEE; A R DEVALL; DAVID LOCKHART; M T MIESCH; HOWARD C PAUL,
also known as Woody; TROY DUPLESSIS; RONALD C EVANS; PHILLIP W
HICKS; EXXON RISK MANAGEMENT SERVICES INC

Defendants-Appellees

---

Appeal from the United States District Court
for the Middle District of Louisiana

---

Before JOLLY, BARKSDALE, and HAYNES, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

In this long-pending litigation arising out of a chemical fire in 1994 at Exxon Corporation's chemical plant at Baton Rouge, Louisiana, Plaintiffs-Appellants number over 16,000 persons, consolidated into 25 separate actions, and all involving actions removed from state court. Following five jury trials, and only on the basis of a removal issue, Appellants contest a 2007 take-nothing judgment against their personal-injury claims, allegedly resulting from the fire.

All but one of the removed actions were filed in Louisiana state court; that one action, in Texas state court. That Texas action, after remand-denial in 1995, was transferred to the Louisiana district court and then consolidated with the Louisiana removed actions.

The sole issue on appeal is whether, on several bases, the district court lacked subject-matter jurisdiction and, therefore, should have remanded the actions to state court. The issues for the actions filed in Louisiana state court are: (1) whether the Louisiana defendants were improperly joined; and (2) whether the amount in controversy satisfied the jurisdictional requirement necessary to remove to federal court, based on diversity jurisdiction. For the action filed in Texas state court, at issue is whether, notwithstanding the extensive federal-court litigation in Louisiana from 1995 to 2007, the action should be remanded to Texas state court because the action was removed in violation of 28 U.S.C. § 1441(b) (an action may not be removed on the basis of diversity if any defendant is a citizen of the forum state). AFFIRMED.

I.

On 8 August 1994, a three-day fire occurred at Exxon's Baton Rouge chemical plant. An Exxon investigation team determined the origins of the fire, as follows.

An eight-inch control valve, through which oil flowed to the upper section of a tower, proved to be unstable. Five days before the fire, and in order to allow higher oil-flow, a group of Exxon employees, called the "SAFE" team, had installed the eight-inch valve to replace a six-inch valve. The nameplate information on the six-inch valve read "full trim"; and, based on this information, the SAFE team put into motion a change management request for a full-trim, eight-inch valve. The information on the six-inch valve's nameplate was incorrect, however; it was a "reduced trim" valve.

On the afternoon of 8 August 1994, cool outside temperature contributed to lower oil rates in the valve, causing the pressure to drop across it. The inappropriate replacement of the six-inch valve with a full, rather than reduced, trim, eight-inch valve contributed to increasing instability in the valve. It ultimately failed, allowing hydrocarbon to spray from the tower and ignite.

All but one of the numerous actions, claiming personal injuries resulting from the fire, were filed in Louisiana state court. That one action was filed in Texas state court. The procedural history for these actions, including the trials in Louisiana district court, follows.

## A.

Within days of the fire, the plaintiffs–thousands of residents of Baton Rouge–began filing actions in Louisiana state court, seeking compensatory and punitive damages for, inter alia, physical injuries and emotional distress, and presenting claims against Texas-based Exxon, Louisiana-based Harmony Corporation, Louisiana-based Desselle-Maggard Corporation (named in only some of the actions), and Louisiana citizens who held positions of responsibility at the plant. Although a large number of these individual defendants were named in the actions, the only ones subject to Appellants' issues on appeal are: Howard Paul, William Senn, Tomas Berry, and Allen Hill ("Individual Defendants").

Some actions were filed as "mass joinder" actions; others, as class actions. As the actions were filed, Exxon removed them to federal district court, pursuant to 28 U.S.C. § 1441, on the basis of diversity jurisdiction, asserting: complete diversity of citizenship existed because the Louisiana defendants were improperly joined; and the amount in controversy exceeded the 28 U.S.C. § 1332 jurisdictional amount (then $50,000). On 22 December 1994, the actions were consolidated in a master docket in the Middle District of Louisiana, No. 3:94-MS-3, In re 1994 Chemical Plant Fire Litigation.

Appellants responded with remand motions. Accordingly, in March 1997, Exxon filed a consolidated opposition to remand, again claiming: the Louisiana corporations and Individual Defendants had been improperly joined; and, the amount-in-controversy requirement for diversity jurisdiction had been satisfied.

That April, Appellants filed a remand motion for all actions, claiming lack of federal subject-matter jurisdiction. Appellants maintained it was lacking because: the Louisiana defendants were properly joined, thus, complete diversity was lacking; and, moreover, the plaintiffs in most actions did not plead damages greater than $50,000, thus, the amount in controversy was not satisfied.

Pursuant to 28 U.S.C. § 636(b)(1)(A), the remand issue was referred to a magistrate judge. On 28 October 1997, the district court denied the remand motion on the amount-in-controversy issue for the reasons stated in the magistrate judge's 16 October 1997 ruling and order in In re 1993 Exxon Coker Fire Litigation, MD 93-MS-2-A-M2 (M.D. La.), which addressed the same jurisdictional issues asserted in the instant appeal. The magistrate judge also ruled that attorney's fees may apply to representatives of a putative class action for purposes of establishing the amount in controversy.

And, on 4 November 1997, the district court issued a corrected ruling, including a decision in favor of Exxon on the complete-diversity issue, omitted from its 28 October order. In that regard, the district court held the Louisiana defendants (Harmony and Desselle-Maggard Corporations, and the Individual Defendants) had been improperly joined. The only Louisiana defendants named on appeal, however, are the Individual Defendants; the Louisiana corporations are no longer parties to the litigation.

On 19 February 2001, the plaintiffs in 16 of the consolidated cases renewed their remand motions. They reasserted that the non-diverse Individual Defendants were properly joined; and, on the authority of rulings from this court since the initial remand motion had been denied (Ard v. Transcon. Gas Pipe Line

Corp., 138 F.3d 596 (5th Cir. 1998), and H&D Tire and Auto.-Hardware, Inc. v. Pitney Bowes Inc., 227 F.3d 326 (5th Cir. 2000)), asserted that punitive damages could not be aggregated as part of the amount-in-controversy calculation–thus, the jurisdictional amount was not met.

Through a 19 April 2001 ruling, the magistrate judge denied the remand motion in 15 of the 16 cases. (The magistrate judge ruled the sixteenth action had been removed improperly because of procedural removal defects and remanded it to state court; its facts are distinguishable from those for which remand was denied.) In so doing, the magistrate judge: reaffirmed the previous ruling that the Individual Defendants were improperly joined; and, while agreeing that punitive damages could not be aggregated to reach the amount in controversy, nevertheless reaffirmed the earlier amount-in-controversy holding on the ground that it was facially apparent that the claims of each individual plaintiff were for more than $50,000. Pursuant to 28 U.S.C. § 636(b)(1)(A), and finding no clear error, the district court affirmed this ruling on 13 June 2001.

B.

As noted, one of the actions on appeal has a unique procedural background, requiring a separate analysis. In Joe Goins, et al. v. Exxon Corp., No. 95-1898 (M.D. La. 10 May 2007), the plaintiffs were–as in all the other actions–residents of Baton Rouge, Louisiana. Unlike the other actions, however, which were filed in Louisiana state court, the 1,564 plaintiffs in this action (Goins plaintiffs) filed their state-court action in Harris County, Texas, in August 1995, one year after the fire. Notably, some were already plaintiffs in the pending litigation in federal district court in Louisiana. The defendants included Texas-based Exxon, Dresser Industries and Masonelian International (two Delaware corporations with their principal places of business in Texas), and Desselle-Maggard Corporation, one of the Louisiana parties later found to be improperly joined.

Exxon removed the action to federal district court in Texas on 19 September 1995. As discussed in more detail infra, it claimed removal was proper for the following reasons: (1) under the All Writs Act, 28 U.S.C. § 1651; (2) pursuant to the general removal provision of 28 U.S.C. § 1441(b), because the action satisfied the "arising under" federal law requirement under the reasoning of Baccus v. Parrish, 45 F.3d 958, 960 (5th Cir. 1995); and (3) because the action could have been brought originally in federal court pursuant to 28 U.S.C. § 1332, as complete diversity existed (it claimed improper joinder) and the requisite amount in controversy was satisfied.

The plaintiffs filed a timely remand motion, claiming improper removal under 28 U.S.C. § 1441(b) (an action may not be removed on the basis of diversity if any defendant (here, Exxon) is a citizen of the forum state). Without stating reasons, the district court denied remand. In the same order, the Goins action was transferred to, and consolidated with, the similar actions pending in the Louisiana district court. In granting the change-of-venue motion, the district court ruled: "[M]any of the plaintiffs in the Louisiana litigation are parties here and there is a great need for a uniform administration of all cases". (As discussed infra, those transfer reasons also bear on the removal issue before us in the Goins action.)

On 27 December 1995, the Goins plaintiffs moved the Louisiana district court to which their action had been transferred to reconsider. On 11 January 1996, the district court filed a notice that a hearing would be held on this motion on 1 March. However, the record indicates this hearing did not take place. Instead, on 16 January, the district court ordered the Goins action to be transferred and consolidated with the rest of the actions pending in the Louisiana litigation.

The Goins plaintiffs re-urged their remand motion on 3 March 1997. Without stating reasons, the district court denied the motion on 13 April 1998.

The Goins plaintiffs did not re-urge their remand motion in 2001 when, as discussed supra, remand was re-urged for the actions originally filed in Louisiana state court.

## C.

In 2006, the plaintiffs in the consolidated actions chose five individual Goins plaintiffs as the first whose claims would be tried. (This was later reduced to four; pre-trial, one plaintiff requested her claims be dismissed with prejudice.) On 26 October 2006, a jury found in Exxon's favor in these test actions.

In April 2007, a jury trial on liability was held for the remaining actions on the master docket; the jury again found in favor of Exxon. Accordingly, on 10 May 2007, the district court entered a take-nothing judgment.

## II.

Appellants do not challenge any aspects of their trials. Instead, solely at issue is whether the district court had subject-matter jurisdiction. As noted, Appellants have consistently claimed that it does not exist.

For the actions filed in Louisiana state court, Appellants first maintain: because the Individual Defendants were properly joined, complete diversity was lacking. Appellants further assert: many of the Louisiana state-court pleadings alleged damages that did not exceed the jurisdictional amount; thus, the amount-in-controversy requirement for federal diversity jurisdiction was also lacking.

For the Goins action, filed in Texas state court, Appellants contend § 1441(b) prohibited removal, because Exxon is a Texas corporation. As a result, they claim the Goins action must be remanded to Texas state court after 13 years of litigation and a take-nothing judgment in federal court.

All told, for the 15 mass-joinder actions: one (Goins) asserts the § 1441(b) bar; nine assert lack of subject-matter jurisdiction for both absence of complete diversity and an amount in controversy below the jurisdictional amount; three

assert only the absence of complete diversity; and two contest only the jurisdictional amount. For the ten class actions, Appellants assert a possible award of attorney's fees should not be aggregated in determining the jurisdictional amount; thus, because the plaintiffs did not allege damages exceeding the then jurisdictional amount of $50,000, the amount-in-controversy requirement was not met.

All subject-matter-jurisdiction issues are reviewed de novo, including improper-joinder, e.g., Gasch v. Hartford Accident & Indem. Co., 491 F.3d 278, 281 (5th Cir. 2007), and amount-in-controversy, e.g., Manguno v. Prudential Prop. & Cas. Ins. Co., 276 F.3d 720, 722 (5th. Cir 2002). Likewise, a remand denial is reviewed de novo. E.g., Melder v. Allstate Corp., 404 F.3d 328, 330 (5th Cir. 2005).

## A.

Concerning the actions filed in Louisiana state court, Appellants first contend: the joinder of the Louisiana Individual Defendants was proper; thus, removal was improper because complete diversity was lacking.

Regarding claimed improper joinder, "[t]he party seeking removal bears a heavy burden of proving that the joinder of the in-state party was improper". Smallwood v. Ill. Cent. R.R. Co., 385 F.3d 568, 574 (5th Cir. 2004). In this circuit,

> the test for [improper] joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant.

Id. at 573. In applying this test, a court may "pierc[e] the pleadings" and consider summary-judgment-type evidence, such as affidavits and deposition testimony. Carriere v. Sears, Roebuck & Co., 893 F.2d 98, 100 (5th Cir. 1990).

Appellants assert the following individuals were properly joined: Paul, the operation section supervisor of Exxon's SAFE team; Senn, the plant manager; Berry, the plant superintendent; and Hill, the operations supervisor of the burned-control-tower site. The inclusion of any of these individuals in the action would have destroyed complete diversity, precluding § 1441 removal jurisdiction.

Accordingly, at issue is whether, as quoted above, there was no reasonable basis for the district court to predict that the plaintiffs might be able to recover against any Individual Defendant. Smallwood, 385 F.3d at 573. As the district court essentially noted, this examination largely hinges upon whether individual liability may be established for any breach of duty that can be shown.

Our analysis of this issue is, of course, conducted using Louisiana law. E.g., Ducre v. Executive Officers of Halter Marine, Inc., 752 F.2d 976, 984 (5th Cir. 1985). In Louisiana, the legal framework with which to conduct this examination is provided by Canter v. Koehring Co., 283 So. 2d 716 (La. 1973), superseded by statute on other grounds as stated in Walls v. Am. Optical Corp., 740 So. 2d 1262, 1265 (La. 1999). In Canter, the Supreme Court of Louisiana approved a four-part test to determine whether individual liability may be established against an employee for breach of a duty imposed solely by reason of his employment or agency relationship. Under this test, individual liability may be established when the following factors are met:

> 1. The principal or employer owes a duty of care to the third person (which in this sense includes a co-employee), breach of which has caused the damage for which recovery is sought.
> 2. The duty is delegated by the principal or employer to the defendant.
> 3. The defendant, officer, agent, or employee has breached this duty through personal (as contrasted with technical or vicarious) fault. The breach occurs when the defendant has failed to discharge the obligation with the degree of care required by ordinary prudence under the same or similar circumstances—whether such failure be due to malfeasance, misfeasance, or nonfeasance, including when the failure results from not acting upon actual knowledge of the risk

9

to others as well as from a lack of ordinary care in discovering and avoiding such risk of harm which has resulted from the breach of the duty.

4. With regard to the personal (as contrasted with technical or vicarious) fault, personal liability cannot be imposed upon the officer, agent, or employee simply because of his general administrative responsibility for performance of some function of the employment. He must have a personal duty toward the injured plaintiff, breach of which specifically has caused the plaintiff's damages. If the defendant's general responsibility has been delegated with due care to some responsible subordinate or subordinates, he is not himself personally at fault and liable for the negligent performance of this responsibility unless he personally knows or personally should know of its non-performance or mal-performance and has nevertheless failed to cure the risk of harm.

Id. at 721 (emphasis added).

Contrary to some of Appellants' assertions, Canter's four-part test is used to determine whether an employee is individually liable to third persons, even if they are not co-employees. See, e.g., Hornsby v. AlliedSignal Inc., 961 F. Supp. 923, 929 (M.D. La. 1997); Lailhengue v. Mobil Oil Corp., 775 F. Supp. 908, 910 (E.D. La. 1991). When the Canter test is applied to the Individual Defendants remaining on appeal, it becomes apparent there is no liability. Restated, the conduct at issue did not involve personal fault giving rise to liability under Louisiana law.

1.

Paul was the operation section supervisor of Exxon's SAFE team. That team had the overall responsibility for the decision to replace the valve involved in this incident. As the magistrate judge stated, the SAFE team was involved in the sense that it

made the decision to ultimately approve the change from a six inch to an eight inch valve. However, there was no requirement that any member of the SAFE team determine the "trim" of the six inch valve before its replacement, or the trim of the eight inch valve, or even that the eight inch valve be inspected to determine whether or not

it was in proper working condition. Nor was the SAFE team responsible for approving the use of a surplus valve rather than a new valve for the replacement. There is no evidence that any individual defendant knew that the "coefficient" of the six inch valve was improperly marked at the time the decision was made to replace it with an eight inch valve . . . . [T]here is no evidence that [a designated member of the SAFE team] personally was responsible for inspecting the six inch valve to determine that it was properly marked.

In re 1994 Exxon Chem. Plant Fire, No. 94-MS-3-C-M1 (M.D. La. 19 Apr. 2001) (Magistrate Judge's "Ruling on Consolidated Motion to Remand"). As discussed supra, the district court affirmed on 13 June 2001.

The evidence essentially establishes only that Paul was the head of the SAFE team, which had overall responsibility for the change process. The evidence does not show that Paul had personal knowledge of the condition of the valves at issue. Paul did not personally perform the valve swap; and the SAFE team met three times in order collectively to approve the valve-change package. Assuming, arguendo, that the first two factors of the Canter test are satisfied, it is apparent that the third and fourth factors are not. There is nothing in the record to suggest Paul was personally at fault, or that, under Canter, he could be held liable.

2.

The remaining Individual Defendants on appeal are: Senn, the plant manager; Berry, the plant superintendent; and Hill, the operations supervisor of the burned-control-tower site. Applying Canter's four-part test, it is apparent that these individuals had even less connection to the valve change than did Paul. They were not members of the SAFE team; and there is no evidence suggesting that they were involved in the valve change. Even if we again assume, arguendo, that the first two factors of the Canter test are satisfied, it is apparent that the third and fourth factors are not.

Our de novo review of the summary-judgment-type evidence available, Carriere, 893 F.2d at 100, leads to the conclusion that Appellants would not have been able to recover against any of the Individual Defendants. See Smallwood, 385 F.3d at 573. Accordingly, essentially for the reasons stated in the magistrate judge's 19 April 2001 ruling, affirmed by the district court on 13 June 2001, we agree that the Individual Defendants were improperly joined.

B.

The only other basis for contending subject-matter jurisdiction is lacking is presented by those Appellants claiming the amount-in-controversy requirement was not satisfied. Those mass-joinder and class-action Appellants are considered in turn.

1.

Many of the Appellants in the mass-joinder actions filed in Louisiana state court pleaded an amount in controversy under $50,000, the then necessary sum for federal diversity jurisdiction. See 28 U.S.C. § 1332 (a district court shall have original jurisdiction of civil actions where the parties are completely diverse and the matter in controversy exceeds a requisite sum, which was $50,000 at the time plaintiffs filed suit, and now is $75,000). They maintain: because Louisiana law precludes them from receiving more than $50,000 once they have pleaded below the jurisdictional amount, the amount-in-controversy requirement was not satisfied; thus, the action was not removable.

It is well established that a plaintiff may avoid federal-court jurisdiction by claiming a sum below the amount in controversy. E.g., St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288-89 (1938). Doing so, however, defeats federal subject-matter jurisdiction only when, "from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed". Id. at 289. On this point, our court clarified the parties' respective burdens in De Aguilar v. Boeing Co., 47 F.3d 1404 (5th Cir. 1995) (De

Aguilar II).  "[T]he plaintiff's claim remains presumptively correct unless the defendant can show by a preponderance of the evidence that the amount in controversy is greater than the jurisdictional amount".  Id. at 1412.  Remand is proper only if the plaintiff has shown it is "legally certain that his recovery will not exceed the amount stated in the state complaint".  Id.  Along this line, De Aguilar II noted that this is not a "burden-shifting exercise . . . . [A] plaintiff must make all information known at the time he files his complaint".  Id.

Appellants assert that, under De Aguilar II, a plaintiff is required to demonstrate legal certainty only when the defendant has first established that "the below-jurisdictional-amount allegation was made in bad faith".  On the contrary, under De Aguilar II, a plaintiff is required to establish legal certainty whenever the defendant has established by "a preponderance of the evidence that the amount in controversy is greater than the jurisdictional amount".  47 F.3d at 1412; see also Grant v. Chevron, 309 F.3d 864, 869 (5th Cir. 2002).

Exxon has met its burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeded the jurisdictional amount.  The damages claims in the various actions are substantially similar, and include:  individual and familial suffering; injuries to physical and mental health, including, but not limited to, emotional distress and mental anguish from the knowledge of exposure to a hazardous substance; expenses incurred by reason of illness caused by the nuisance; fear and apprehension of further exposure to, and impact from, hazardous chemicals; economic and financial harm; loss of enjoyment of life and peaceful use of property; and, other consequential, incidental, general, and special damages.  Additionally, almost all of the plaintiffs seek punitive damages.

Because Exxon has met its burden, the question at hand is whether Appellants have demonstrated it is legally certain they could not recover more than $50,000.  They have not done so.  As the magistrate judge noted in his 19

April 2001 ruling, under Louisiana Code of Civil Procedure Article 862, a party is entitled to any relief to which he is entitled, regardless of whether he has demanded such relief in his pleadings. As such, a litigant could avoid federal court by pleading less than the amount required for federal jurisdiction, prove greater damages in a state-court trial, and be awarded more than the jurisdictional amount by that court. For this reason, in actions like those at hand, plaintiffs are required to demonstrate to a legal certainty that they can not recover more than the jurisdictional amount.

Appellants maintain Louisiana law precludes them from recovering more than $50,000 once they have pleaded below the jurisdictional amount. In this regard, they claim three Louisiana statutes establish their jurisdictional-amount allegations are binding, irrevocable, and definitive. None of the three cited statutes—Louisiana Code of Civil Procedure Articles 5 and 893(A)(1), and Louisiana Civil Code Article 1853—expressly limits recovery, however, to the damages sought in Appellants' complaints.

a.

Article 893(A)(1) generally prohibits a plaintiff from pleading a specific dollar-amount of damages. It provides, however: if pleading a specific amount of damages "is necessary to establish . . . the lack of jurisdiction of federal courts due to insufficiency of damages . . . a general allegation that the claim is less than the requisite amount is required". LA. CODE CIV. PROC. art. 893(A)(1). Appellants dub this an "anti-removal" provision. They concede, however, that no reported Louisiana state court case has addressed this issue in the context of removal.

On the other hand, federal courts interpreting the statute have implied that, rather than irrevocably binding a plaintiff to his amount-in-controversy allegations, an allegation made under Article 893(A)(1) may be disregarded if the defendant can show by a preponderance of the evidence that the claim is for

more than the jurisdictional amount. See Grant v. Chevron, 309 F.3d at 868 & n.8 (stating that Article 893(A)(1)'s exception to the general prohibition against alleging a specific dollar amount is not relevant to an amount-in-controversy dispute); Richard v. Ga. Gulf Lake Charles, 2007 WL 2319804 at *7 (W.D. La. 10 Aug. 2007) (stating that a defendant may still prove by a preponderance of the evidence that the claim is for more than the jurisdictional amount, even when a plaintiff alleges, under Article 893, that his damages are insufficient to satisfy the amount in controversy).

b.

Similarly, Article 5 is inapplicable. It instructs: when a plaintiff reduces the amount of his claim in a single cause of action to bring it within the jurisdiction of a court and judgment is rendered on it, "he remits the portion of his claim for which he did not pray for judgment, and is precluded thereafter from demanding it judicially". LA. CODE. CIV. PROC. art. 5. Appellants contend: under Article 5, because they have stated their claims do not exceed $50,000, they cannot recover more than that amount.

Again, however, there is no reported Louisiana state-court case addressing this provision in the context of removal. Appellants rely on Bullock v. Graham, 681 So. 2d. 1248 (La. 1996), abrogated in part by Benoit v. Allstate Ins. Co., 773 So. 2d 702 (La. 2000); this case, however, involved a plaintiff who stipulated a particular amount of damages to avoid a jury trial, not federal-court jurisdiction. Moreover, the Official Revision Comment to the provision states: "This rule is based on the same principle of law as that which forbids the splitting of the cause of action". LA. CODE CIV. PROC. art. 5, cmt. (1999); see also Morrison v. New Orleans Pub. Serv., Inc., 415 F.2d 419, 424 (5th Cir. 1969) (citing Article 5 in noting that Louisiana courts do not allow a survivor to split an individual wrongful-death claim into separate actions, and, if one claim is litigated, the plaintiff waives the right to litigate any other).

C.

Finally, Article 1853 does not support Appellants' contention that they are precluded from recovering above the jurisdictional amount. It provides: "[A] judicial confession is a declaration made by a party in a judicial proceeding. That judicial confession constitutes full proof against the party who made it". LA. CIV. CODE art. 1853.

Again, Appellants rely primarily on Louisiana state-court cases that have been decided in the context of avoiding jury trials. The one case they cite that has interpreted Article 1853 in the context of removal, Engstrom v. L-3 Commc'ns Gov't Services, Inc., 2004 WL 2984329 (E.D. La. 23 Dec. 2004), is inapposite.

In Engstrom, the court relied on Article 1853 to remand a diversity-removed action to state court, because the below-jurisdictional-amount allegation was deemed a "judicial confession" and thus controlled by Article 1853. Id. at *4. The plaintiffs were able to show with legal certainty that their claims were for less than the jurisdictional amount, because they had "affirmatively and knowingly waive[d] entitlement to any damages . . . in excess of [the jurisdictional amount], after having been advised that their waiver was binding and effective and that under no circumstances could a Louisiana state court award them more". Id.

In the instant actions, by contrast, the plaintiffs merely alleged that the amount in controversy did not exceed the jurisdictional amount; they did not deny that they would accept more than $50,000. Courts have held that, because, under the above-referenced Article 862, plaintiffs are not limited to recovery of the damages requested in their pleadings, a plaintiff must affirmatively waive the right to accept a judgment in excess of the jurisdictional amount in order for his pre-removal state-court stipulations to bind him. See Ardoin v. Allstate Ins. Co., 2007 WL 97062, at *2 (E.D. La. 9 Jan. 2007); Gasquet v. Lexington Ins. Co.,

2006 WL 3497777, at *2-3 (E.D. La. 30 Nov. 2006). Because plaintiffs did not stipulate they would not accept more than the jurisdictional amount, the state court would not be bound by this limit.

In the light of these cases, and the lack of any Louisiana state-court opinions interpreting these articles in the context of removal to federal court, Appellants have not demonstrated a legal certainty that they cannot recover more than $50,000. Because this conclusion does not appear legally certain, and because nothing suggests the mass-joinder Appellants have claims necessarily worth less than $50,000, the district court correctly found subject-matter jurisdiction and, therefore, refused to remand these cases.

2.

The class-action Appellants assert their claims do not exceed $50,000, but they do so without citation to any factual or legal support. They maintain: "Their damages are the result [sic] their proximity to a refinery fire, temporary exposure [sic] the release from the fire, and fear and fright as a result. Thus, their claims are well within the jurisdictional amount". The quoted passage constitutes roughly half of the class-action Appellants' discussion of the value of their claims. Their conclusory assertions hardly satisfy the legal-certainty requirement.

Appellants also assert the district court, on 28 October 1997, erred in affirming the magistrate judge's 16 October 1997 ruling, discussed supra, that attributed the amount of attorney's fees to the class representatives and included them in calculating the amount in controversy. They concede implicitly that this position is foreclosed by the earlier-cited opinion in Grant v. Chevron, 309 F.3d 864 (5th Cir. 2002), but claim Grant does not apply because it was decided five years after the motion to remand was denied in 1997. They claim the "overwhelming federal jurisprudence at the time [of the order denying remand] required" remand to state court.

17

Had Grant overruled a prior case in which we had adopted an opposite rule, Appellants' claim might have some merit. Grant, however, noted that "some judges of the Eastern District of Louisiana have read [In re Abbott Laboratories, 51 F.3d 524 (5th Cir. 1995)]" for the rule that attorney's fees should not be included in the amount in controversy. Grant, 309 F.3d at 871 (emphasis added). Grant rejected this reading of Abbott and held: "[I]n connection with a Louisiana class action suit that asserts a cause or causes of action for which there is no separate attorney's fees provision under Louisiana law, attorney's fees are nevertheless . . . attributable to the class representatives for purposes of the court's calculation of the amount in controversy". Grant, 309 F.3d at 876.

Obviously, the magistrate judge's correctly reading Abbott without the benefit of our clarification in Grant does not render his ruling incorrect. The attorney's fees were properly attributed to the class representatives for calculating the amount in controversy. And, under 28 U.S.C. § 1367, the federal court could exercise supplemental jurisdiction over the claims of the other class members. See Abbott Labs., 51 F.3d at 529. The district court, therefore, properly determined that the amount in controversy necessary for federal jurisdiction was met in the class actions.

In sum, because the Individual Defendants were improperly joined and it is facially apparent the amount in controversy exceeded the § 1332 jurisdictional requirement, federal subject-matter jurisdiction exists for all consolidated actions filed originally in Louisiana state court. Accordingly, the final issue is whether federal subject-matter jurisdiction exists for the Goins action, filed in Texas state court.

C.

As discussed supra, the Goins plaintiffs were more than 1,500 residents of Baton Rouge, Louisiana. Unlike the other actions, however, which were filed

in Louisiana state court, the Goins plaintiffs filed their state-court action in Harris County, Texas. After more than 13 years of litigation in the Louisiana district court, the Goins Appellants urge vacating the take-nothing judgment and remanding to Texas state court because Exxon, a Texas corporation, was precluded by 28 U.S.C. § 1441(b) from removing the action to federal court in 1995.

The first sentence of 28 U.S.C. § 1441(b) provides that any civil action filed in state court, over which the federal district court would have original jurisdiction, may be removed to federal court. The second sentence, the portion of § 1441(b) at issue, however, provides that removal based on diversity jurisdiction is permitted only if "none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought". 28 U.S.C. § 1441(b) (emphasis added). This portion is often referred to as the "forum-defendant rule".

Outlined in 28 U.S.C. § 1446 is the procedure by which a defendant may remove an action to federal court, allowing a defendant in a removable action 30 days in which to file a notice of removal. 28 U.S.C. § 1446. If, after removal, the plaintiff objects "on the basis of any defect other than subject matter jurisdiction", the plaintiff has 30 days after the filing of the notice of removal to file a motion to remand. 28 U.S.C. § 1447(c). Of course, lack of subject-matter jurisdiction may be raised at any time before final judgment. Id.

A year after the 1994 fire, the Goins plaintiffs filed their action in Texas state court. Arguably, they did so to prevent removal because the principal defendant (Exxon) was a Texas corporation.

As discussed supra, Exxon removed the action to federal court, claiming removal was proper on three grounds: (1) under the All Writs Act, 28 U.S.C. § 1651 (providing authority to remove what might be an otherwise unremovable

state-court action to "'effectuate and prevent the frustration of orders [the federal court] has previously issued in its exercise of jurisdiction otherwise obtained'", In re "Agent Orange" Prod. Liab. Litig., 996 F.2d 1425, 1431 (2d Cir. 1993), overruled in part by Syngenta Crop Prot., Inc. v. Henson, 537 U.S. 28 (2002) (citation omitted)); (2) pursuant to the general removal provision of 28 U.S.C. § 1441(b), because "arising under" jurisdiction existed under the reasoning of Baccus v. Parrish, 45 F.3d 958, 960 (5th Cir. 1995), in which this court held removal was proper where a claim brought in state court sought to attack or undermine an order of the federal district court; and (3) because the action could have been originally brought in federal court, pursuant to 28 U.S.C. § 1332, because, in the absence of fraudulent joinder, complete diversity existed, and it was facially apparent the amount in controversy exceeded the jurisdictional amount.

After removal, the plaintiffs filed a timely remand motion, pursuant to 28 U.S.C. § 1447(c). Without providing reasons, the district court denied remand in a 2 November 1995 order. (As discussed infra, its reasons for denying remand are probably found in that part of the order in which the Goins action was transferred to, and consolidated with, the actions pending in the Louisiana district court.)

The validity of Exxon's first two removal bases changed subsequent to removal. While arguably a proper ground for removal in 1995, after Syngenta Crop Protection, Inc. v. Henson, 537 U.S. 28, 34 (2002), the All Writs Act cannot confer the original jurisdiction required for removal under 28 U.S.C. § 1441. Similarly, this court's holding in Baccus, that federal jurisdiction is proper when a state-court action seeks to undermine an order of the federal court, has been cast into doubt by subsequent decisions. See Texas v. Real Parties in Interest, 259 F.3d 387, 394 n.10 (5th Cir. 2001) (noting "our decision in Baccus retains

little precedential value"). These two removal bases need not be addressed further, however, as we affirm the take-nothing judgment, and deny Appellants' request to remand the Goins action to Texas state court, on other grounds, explained infra.

Concerning the "forum-defendant" portion of § 1441(b), and for purposes of this appeal, the question is not whether the Goins action was improperly removed, but whether the district court's denying remand in 1995 mandates we vacate the 2007 take-nothing judgment. To answer this, we must determine: whether the "forum-defendant rule" is a jurisdictional or procedural requirement; and whether, if a procedural requirement, denying remand after a timely motion was fatal when, subsequently, federal jurisdictional requirements were met at the time of judgment and after extensive litigation.

1.

Whether § 1441(b)'s forum-defendant rule is a jurisdictional or procedural requirement is of crucial importance. Of course, if jurisdictional, it would have been without the bounds of the federal court's constitutional authority to hear the case. As discussed below, our court, however, has held the forum-defendant rule to be a procedural requirement in certain circumstances. See In re Shell Oil Co., 932 F.2d 1518 (5th Cir. 1991) (Shell Oil).

In Shell Oil, a group of Costa Rican nationals sued in Texas state court. There was complete diversity. The defendants removed the action to federal court, asserting the in-state defendants were improperly joined to defeat removal. After the 30-day limit for seeking remand had passed, the plaintiffs moved to remand. The district court granted the untimely motion, ruling: the in-state defendants were properly joined; and, thus, under § 1441(b), the case was improperly removed. Id. at 1518.

On petition for a writ of mandamus, our court's discussion centered on whether it had jurisdiction to review the remand decision. Generally, appellate review of remand orders is barred by 28 U.S.C. § 1447(d) (providing an order remanding a case to the state court from which it was removed is not reviewable on appeal or otherwise).

In that regard, Thermtron Products, Inc. v. Hermansdorfer, 423 U.S. 336 (1976), abrogated on other grounds by Quackenbush v. Allstate Ins. Co., 517 U.S. 706 (1996), held review of remand orders was available by petition for a writ of mandamus, when remand was explicitly based on grounds other than those specified in 28 U.S.C. § 1447(c), quoted below. Id at 345-46. When Shell Oil was decided, § 1447(c) stated:

> A motion to remand the case on the basis of any defect in removal procedure must be made within 30 days after the filing of the notice of removal under § 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.

28 U.S.C. § 1447(c) (amended 1996) (emphasis added). Because remand orders for lack of subject-matter jurisdiction were specified in § 1447(c), such orders were clearly unreviewable. Shell Oil, 932 F.2d at 1520.

Subsequently, § 1447(c) was amended, effective 1 October 1996, substituting "on the basis of any defect other than lack of subject matter jurisdiction" for "on the basis of any defect in removal procedure". The changes, clearly, did not affect the non-reviewability of remands based on lack of subject-matter jurisdiction. See Angelides v. Baylor Coll. of Med., 117 F.3d 833, 836 (5th Cir. 1997).

Shell Oil (1991) held jurisdiction existed to review the district court's remand decision. In doing so, it spoke definitively to the nature of the forum-defendant rule:

> Although the defendants were citizens of the forum state, the district court still had subject matter jurisdiction because complete diversity existed. Thus the district court, which clearly had subject-matter jurisdiction, based its remand order on the lack of removal jurisdiction under § 1441(b).

Shell Oil, 932 F.2d at 1519 (citations omitted and emphasis added). Because, "[i]n the instant case, the district court based its remand order on § 1441(b) and not on lack of subject matter jurisdiction", Shell held our court could review the remand order. Id. at 1520 (emphasis added). The removal in violation of § 1441(b) was thus a defect in removal procedure, which our court found to be waived, because the plaintiffs failed to move for remand within the requisite 30-day period. Id. at 1523.

Our sister circuits provide support for this determination of the forum-defendant rule's procedural nature. Hurley v. Motor Coach Indus., Inc., 222 F.3d 377 (7th Cir. 2000), analyzed a situation similar to the instant appeal. The plaintiff, an Arkansas resident, was involved in an accident with a trailer. In Illinois state court, he sued the operators and makers of the trailer, as well as another trailer manufacturer. One of the defendants was an Illinois resident.

The defendants removed the action to federal court, claiming complete diversity. Removal was not contested. Later, the plaintiff settled his claims against most of the defendants, and dismissed the in-state defendant.

The Seventh Circuit, on appeal on the merits, sua sponte addressed whether it had jurisdiction, improper removal not having been raised in district court. In determining that the forum-defendant rule was a waivable, procedural requirement, it stated: "[I]f [appellant's] case had been filed in the first instance in federal court, jurisdiction under § 1332 would have been clear . . . . [T]he case as it arrived in federal court met every requirement for federal jurisdiction: it simply took the wrong path, in a sense, because there was an in-state defendant.

This, we think, is more a matter of removal procedure, and hence waivable, than a matter of subject matter jurisdiction." Id. at 380 (emphasis added).

Similarly, in Korea Exchange Bank v. Trackwise Sales Corp., the Third Circuit held:

> An irregularity in removal of a case to federal court is to be considered "jurisdictional" only if the case could not initially have been filed in federal court . . . . The invocation of the removal machinery by a citizen of the forum state, while error, is not a "jurisdictional" defect under relevant Supreme Court precedent. Rather, it is a "defect in removal procedure" that can be waived.

66 F.3d 46, 50 (3d Cir. 1995) (emphasis added).

This conclusion regarding the procedural nature of the forum-defendant rule has been reached by many other federal appellate courts. See, e.g., Farm Constr. Servs., Inc. v. Fudge, 831 F.2d 18, 21-22 (1st Cir. 1987); Borg-Warner Leasing v. Doyle Elec. Co., Inc., 733 F.2d 833, 835 n.2 (11th Cir. 1984); Woodward v. D.H. Overmyer Co., Inc., 428 F.2d 880, 882-83 (2d Cir. 1970).

In addition, some Supreme Court decisions also suggest that the forum-defendant rule does not impose an independent jurisdictional requirement. In Grubbs v. General Electric Credit Corp., 405 U.S. 699 (1972), the Court was faced with a removal unauthorized by the governing statute. General Electric Credit Corp. (GECC), a New York corporation, sued Grubbs, a Texas citizen, in Texas state court on state-law claims. Complete diversity existed and the amount-in-controversy requirement was met. Grubbs filed a state-court "cross-action", including the United States as defendant. In turn, the United States, without objection, removed the action to federal district court, pursuant to 28 U.S.C. § 1444 (providing that when the United States is made a party to any action in state court under 28 U.S.C. § 2410–a statute discussing disputes over property on which the United States has or claims to have a mortgage or lien–it may

24

remove the action to the federal district court for the district in which the action is pending).

All parties treated this removal as a removal of the entire action. The action was tried, and a judgment was rendered on the merits against GECC; all of Grubbs' claims against the United States were dismissed.

Our court, sua sponte, questioned the jurisdiction of the district court. It determined: the United States' removal of the action had not been authorized under § 1444; and, because there was no other basis for the district court's jurisdiction, the action should have been remanded to state court. Id. at 700-02.

The Supreme Court reversed, citing Baggs v. Martin, 179 U.S. 206 (1900), and Mackay v. Uinta Development Co., 229 U.S. 173 (1913), as supporting the notion that the issue "is not whether the case was properly removed, but whether the federal district court would have had original jurisdiction of the case had it been filed in that court". Grubbs, 405 U.S. at 702. A discussion of Baggs and Mackay follows.

In Baggs, a federal-court-appointed receiver for a railroad was sued in state court for the injuries and death of a passenger; the receiver removed to federal court, claiming a federal question because the federal court had appointed him. Following an adverse judgment on the merits, however, the receiver sought reversal on the ground that the case was not properly removable (presumably asserting that his federal appointment did not create a federal question).

Although the Supreme Court agreed no federal question supported the removal, it noted that the federal courts nonetheless would have had original jurisdiction over any action affecting the railroad. The Court thus held the receiver could not object to removal when it came from his own actions, ruling that the federal court "plainly had jurisdiction to entertain and determine the

25

controversy, whether that jurisdiction was invoked by the parties seeking redress, or, as in this case, by the receiver". Baggs, 179 U.S. at 209.

An analogous situation existed in Mackay. A Wyoming plaintiff filed an action in Wyoming state court against a Utah defendant for less than the requisite amount in controversy for diversity jurisdiction (and, therefore, required to remove to federal court). The defendant's counterclaim exceeded the jurisdictional amount; however, it was filed after the time period under state rules in which he could respond to the original pleading. The defendant removed to federal court, and the action was tried without objection.

Based on failure to comply with the removal statutes, the losing party sought to overturn the judgment against him. At issue in the Supreme Court was whether, assuming the action's removal was not in conformity with the removal statute, the failure to properly invoke the jurisdiction of the federal courts undermined the court's ultimate jurisdiction, if all of the jurisdictional elements were present that would have allowed the parties originally to file the action in federal court. Mackay, 229 U.S. at 175.

The Court held federal jurisdiction was not undermined. "[T]here was the requisite amount and the diversity of citizenship necessary to give the [federal] court jurisdiction of the cause. The case, therefore, resolves itself into an inquiry as to whether, if irregularly removed, it could be lawfully tried and determined". Id. at 176. It concluded: "[A]s the court had jurisdiction of the subject-matter, . . . if there was any irregularity in docketing the case or in the order of the pleadings, such an irregularity was waivable, and neither it nor the method of getting the parties before the court, operated to deprive it of the power to determine the cause". Id. at 176-77.

Relying on the above-discussed precedent, Grubbs (1972) held: because the original dispute was between completely diverse parties and the amount-in-

controversy requirement was met, the district court could have had original jurisdiction under 28 U.S.C. § 1332. Grubbs, 405 U.S. at 704. Although the action was not originally filed in federal court, it would have had original jurisdiction; thus, the improper removal was not fatal when neither party questioned it until after judgment on the merits.

The above-discussed precedents, including Baggs, Mackay, and Grubbs, all lend support to the following conclusion: where there is improper removal, the pertinent question is whether the removed action could have been filed originally in federal court; and, if it could have been and the action has proceeded to judgment on the merits in federal court, that judgment will not be disturbed. Another factor that may preclude remand is addressed infra: extensive litigation in federal court.

2.

The Goins plaintiffs' not having waived their right to have their action remanded to state court does, of course, distinguish the Goins action from those discussed above. As discussed supra, the plaintiffs timely moved to remand; without stating reasons, the district court denied that motion.

Appellants maintain: because they timely moved for remand, the waiver rule stated in Shell Oil is inapplicable; and, therefore, their timely motion made the forum-defendant defect an issue of subject-matter jurisdiction, not procedure. The timeliness of the remand motion does distinguish the Goins action from Shell Oil. Nevertheless, a timely-filed remand motion does not automatically render the forum-defendant rule jurisdictional.

Appellants' contention relies on a footnote in the companion appeal to the above-discussed Shell Oil opinion; in that companion appeal, our court explicitly limited the Shell Oil holding regarding remands over which our court had jurisdiction to untimely remand motions and remand orders not based on

27

subject-matter jurisdiction. See In re Shell Oil Co., 932 F.2d 1523, 1526 n.4 (5th Cir. 1996) (Shell II). As discussed supra, in Shell Oil, our court held remands for lack of subject-matter jurisdiction were clearly unreviewable under § 1447(d). Shell Oil, 932 F.2d at 1520.

In Shell II, our court declined, however, to decide whether remands based on timely remand motions were unreviewable as well. This question was subsequently decided in Things Remembered Inc. v. Petrarca, 516 U.S. 124, 127-28 (1995). There, the Supreme Court held that remands both for lack of subject-matter jurisdiction and those based on a timely-raised defect in removal procedure are not reviewable. (This holding was premised on the long-standing judicial recognition of Congress' policy, reflected in § 1447(d), opposing "interruption of the litigation of the merits of a removed cause by prolonged litigation of questions of jurisdiction of the district court to which the cause is removed". Kircher v. Putnam Funds Trust, 547 U.S. 633, 640 (2006) (quoting United States v. Rice, 327 U.S. 742, 751 (1946)).)

Therefore, under § 1447(d), a remand based on a timely-raised defect in removal procedure is not reviewable. (In the Goins action, of course, remand was denied.) On the other hand, this does not mean that filing a timely remand motion changes the forum-defendant rule from procedural to jurisdictional. That much can be determined simply from reading the above-cited footnote in Shell II: "Here, as in [Shell Oil], we limit our holding to cases in which the remand motions were not timely, and in which the remand orders were not based on lack of subject matter jurisdiction". Shell II, 932 F.2d at 1526 n.4 (emphasis added). As stated supra, the untimely remand motion in Shell II was based on removal involving a forum defendant, in violation of § 1441(b).

If a timely remand motion made the forum-defendant rule jurisdictional, the second half of the above-quoted sentence from Shell II would be rendered

superfluous. A better reading of the footnote recognizes our court was simply discussing grounds for remand not mentioned in § 1447(c), and thus subject to appellate review. In Shell II, our court stated its understanding of the nature of the forum-defendant rule: "Because the remand order was based on a defect in removal procedure [removing in violation of § 1441(b)], and not a lack of subject matter jurisdiction, an exception to non-reviewability existed." Id. at 1528 (emphasis added).

In sum, the forum-defendant rule remains a procedural requirement that a timely motion to remand does not change.

3.

The procedural nature of the forum-defendant rule's having been established, at issue is whether the district court's refusing to remand in 1995 mandates our vacating the 2007 take-nothing judgment, when federal jurisdiction existed.

Caterpillar v. Lewis, 519 U.S. 61 (1996), greatly informs our decision. Lewis, the plaintiff in Caterpillar and a Kentucky citizen, filed an action in Kentucky state court, presenting state-law claims for personal injuries arising out of operating a bulldozer. Named as defendants were: Caterpillar, Inc., a Delaware corporation with its principal place of business in Illinois, and Whayne Supply Company, a Kentucky corporation with its principal place of business in Kentucky. Liberty Mutual Insurance Group, a Massachusetts corporation with its principal place of business there, later intervened as a plaintiff, with subrogation claims against both Caterpillar and Whayne Supply.

Lewis and Whayne Supply settled, after which Caterpillar promptly removed to federal court on the basis of complete diversity of citizenship. It did so based on the assumption that the settlement between Lewis and Whayne Supply would lead to the latter's dismissal.

Lewis timely moved to remand, asserting that Liberty Mutual's outstanding claim against Whayne Supply precluded complete diversity of citizenship. Erroneously concluding that diversity had become complete, the district court denied the motion. Later, before trial, Liberty Mutual and Whayne Supply settled, and Whayne Supply was dismissed from the action; thus, complete diversity existed thereafter between Lewis and Caterpillar.

On appeal, the Sixth Circuit vacated the judgment against Lewis, holding: the presence of an in-state defendant destroyed complete diversity at the time of removal; therefore, the district court lacked subject matter jurisdiction. Id. at 64-67.

Thus, the question faced by the Court in Caterpillar was the one at hand: whether the district court's not remanding an improperly-removed action is fatal to the ensuing adjudication, if federal jurisdictional requirements are met when judgment is entered on the merits. See id. at 64. In other words, could a plaintiff who timely objects to removal later successfully challenge an adverse judgment on the ground that the removal did not comply with statutory prescriptions? Id. at 73.

Noting the many similarities to those in Grubbs (but also noting there had been no objection to removal in Grubbs), id., the Court concluded that the judgment should stand. While noting Lewis did all that was required to preserve his objection to removal by filing a timely remand motion, the Court determined his claims collided with an "overriding consideration": "Once a diversity case has been tried in federal court, with rules of decision supplied by state law under the regime of Erie R. Co. v. Tompkins, considerations of finality, efficiency, and economy become overwhelming." Id. at 75 (citation omitted). "'[R]equiring dismissal after years of litigation' . . . 'would impose unnecessary and wasteful burdens on the parties, judges and other litigants waiting for

judicial attention'." Id. at 76 (quoting Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 836 (1989)).

Obviously, these considerations are manifest in the Goins action. The Caterpillar litigation spanned three years in federal court, including a six-day trial, before final judgment; the Goins action, in addition to the 24 other consolidated cases, has been in federal court over 13 years. Several judges presided over the litigation while it proceeded in the Louisiana district court, and five jury trials have been conducted. While, of course, not a requirement, id. at 74, it is most instructive, regarding the above-noted considerations of finality, efficiency, and economy, that, in each instance the Goins plaintiffs' remand motion was denied, they failed to seek an interlocutory appeal pursuant to 28 U.S.C. § 1292 (giving federal appellate courts jurisdiction of appeals, if certified, from interlocutory orders of the district courts).

In addition, we are troubled greatly–to say the least–by the blatant gamesmanship employed by the Goins plaintiffs in filing their action in Texas state court a year after the fire. By the time they did so, processing the claims of over 16,000 plaintiffs in the Louisiana district court was well underway. Obviously, migration from the Louisiana mass-tort litigation to Texas state court frustrated and circumvented the extensive case-management orders already entered by the district court in the Louisiana litigation.

This is clearly evidenced by the Texas state-court action's having been originally filed by nine plaintiffs; yet, by the time Exxon filed its notice of removal, the action had exploded to include 1,564 plaintiffs, some of whom were already plaintiffs in the pending Louisiana federal litigation. Moreover, pre-removal, while the action was in Texas state court, the Goins plaintiffs served extensive discovery requests that went beyond the restrictions imposed in the Louisiana litigation.

31

The combination of all of these factors–finality, efficiency, economy, and an honest assessment of the history of this case–militates against now allowing the Goins Appellants to start afresh in Texas state court. Along this line, and as discussed supra, although the district court in Texas denied remand without stating reasons, its earlier-quoted reasons for granting a change of venue in the same 2 November 1995 order are applicable for not remanding post-judgment: "[M]any of the plaintiffs in the Louisiana litigation are parties here and there is a great need for a uniform administration of all cases".

4.

The Goins Appellants claim that affirming the take-nothing judgment would contradict the judicially-created "voluntary-involuntary" rule, by which "an action nonremovable when commenced may become removable thereafter only by the voluntary act of the plaintiff". Crockett v. R.J. Reynolds Tobacco Co., 436 F.3d 529, 532 (5th Cir.) (quoting Weems v. Louis Dreyfus Corp., 380 F.2d 545, 547 (5th Cir. 1967)), cert. denied, 548 U.S. 907 (2006). The voluntary-involuntary rule is inapplicable in the Goins action because it simply raises the wrong question.

Again, the issue is not whether the case was properly removable. Instead, the question, of course, is whether, the Goins action having been removed in 1995 in violation of § 1441(b)'s forum-defendant rule, the 2007 take-nothing judgment must be vacated and the action remanded to Texas state court. The resolution of that inquiry is extensively discussed supra.

Moreover, the need to address the voluntary-involuntary rule in this instance is obviated by our court's recent opinion in McAteer v. Silverleaf Resorts, Inc., 514 F.3d 411 (5th Cir.), cert. denied, 128 S. Ct. 2884 (2008). In McAteer, the plaintiff filed an action in Texas state court, raising state-law negligence claims.

The defendant removed to federal court, asserting ERISA completely preempted the plaintiff's claims.

The district court denied a timely-filed remand motion, instead ordering mediation and staying the action for four months. After three months, the plaintiff, while still objecting to the district court's remand denial, amended her complaint to raise a claim under ERISA. Id. at 413-14. Ultimately, mediation proved unsuccessful, and the district court granted the defendant's motion to compel arbitration, dismissing the plaintiff's claims with prejudice.

On appeal, the plaintiff asserted the district court erred by denying remand. Id. at 414-15. The defendant urged that plaintiff had waived her right to object to federal jurisdiction by voluntarily amending her complaint to add a federal claim. In determining whether the plaintiff had waived the jurisdictional defect, our court noted: "We need not consider the voluntary-involuntary rule", because our court, in Waste Control Specialists, LLC v. Envirocare of Texas, Inc., 199 F.3d 781, withdrawn & superseded in part, 207 F.3d 225 (5th Cir. 2000), and the Supreme Court, in Caterpillar, had already addressed comparable situations and supplied the rule of decision in the case. See McAteer, 514 F.3d at 415.

In Waste Control Specialists, cited in McAteer, the district court improperly concluded that federal antitrust law preempted the plaintiff's claims. After its remand motion was denied, the plaintiff amended its complaint to include a federal antitrust claim. After the action was dismissed on a Rule 12(b)(6) motion, it appealed on the basis of improper removal. 199 F.3d at 782-83.

In determining that the plaintiff's decision to add a federal claim did not waive the objection to removal, our court noted that Caterpillar had looked favorably on the plaintiff's contention that diligent objection can preserve the jurisdictional claim, despite subsequent amendment. Id. at 785 (citing Caterpillar, 519 U.S. at 72-77). Caterpillar, however, ultimately upheld the

judgment because the "considerations of finality, efficiency, and economy [became] overwhelming". Caterpillar, 519 U.S. at 75.

In Waste Control Specialists, the plaintiff had diligently objected to removal; and, as noted, the case had been dismissed on a Rule 12(b)(6) motion (which, our court observed, stopped short, of course, of a "trial on the merits", Waste Control Specialists, 199 F.3d at 786). As the district court had taken only "eleven days and ten pages" in ruling on the defendant's motion to dismiss, our court held that the "overwhelming considerations of finality, efficiency, and economy" present in Caterpillar were not present in Waste Control Specialists, and thus the waiver doctrine was not applicable. Id. at 787.

Therefore, in McAteer, our court recognized both Caterpillar and Waste Control Specialists instruct: a timely remand motion preserves improper-removal contentions; and a subsequent amendment that creates federal jurisdiction does not necessarily make them moot. Nevertheless, "if subject matter jurisdiction is eventually established and a case remains in the federal court system for a significant length of time or reaches a verdict on the merits, considerations of finality and economy may result in affirming a judgment despite the improper removal". McAteer, 514 F.3d at 416 (emphasis added). As McAteer had preserved her contention regarding removal and the federal court had not addressed the merits of the case in the little time it spent there prior to the defendant's motion to dismiss being granted, our court determined that the above-referenced Caterpillar considerations of finality, efficiency, and economy were not present, and plaintiff's adding an ERISA claim after the district court's ruling did not render moot the appeal of the remand-denial. Id. at 416.

McAteer instructs that the voluntary-involuntary rule is inapplicable to the Goins action. Once an action has been improperly removed, the controlling concern is not whether the plaintiff voluntarily amended his complaint to create

34

federal subject-matter jurisdiction (which, in any event, already existed in the Goins action). Rather, in deciding whether to vacate a judgment because of improper removal, and if subject-matter jurisdiction is established, the relevant consideration becomes: whether the action has been either adjudicated on the merits or alternatively has remained in federal court long enough that considerations of finality, efficiency, and economy enter into the equation. In McAteer and Waste Control Specialists, we determined that answer to be "no". Here, it is most definitely "yes".

In sum, in the Goins action, as in Caterpillar, federal subject-matter jurisdiction existed at the time of judgment. The Goins plaintiffs, Louisiana residents, were completely diverse from Exxon, a Texas corporation. As discussed supra, it is facially apparent that the amount in controversy exceeded the jurisdictional amount. Because the § 1441(b) forum-defendant rule is a procedural requirement, the improper removal did not affect subject-matter jurisdiction, even in the light of the timely remand motion.

In the Goins action, as in Caterpillar, the considerations of "finality, efficiency, and economy" are truly overwhelming. As stated in Caterpillar:

> [N]o jurisdictional defect lingered through judgment in the District Court. To wipe out the adjudication postjudgment, and return to state court a case now satisfying all federal jurisdictional requirements, would impose an exorbitant cost on our dual court system, a cost incompatible with the fair and unprotracted administration of justice.

Id. at 77. The same would be true, to an even larger degree, if, after over 13 years of litigation in federal court, including five jury trials, the 2007 take-nothing judgment were vacated and 1,564 plaintiffs (some of whom were also unsuccessful plaintiffs in the actions filed originally in Louisiana state court) were returned to Texas state court.

III.

For the foregoing reasons, the judgment is AFFIRMED.