# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

April 19, 2016

Lyle W. Cayce
Clerk

No. 14-30925

TINA DAVIDSON, Individually and on behalf of William Cleve Davidson; KATHRYN D. DAVIDSON, Individually and on behalf of William Cleve Davidson; KRISTEN M. DAVIDSON, Individually and on behalf of William Cleve Davidson,

      Plaintiffs - Appellants

v.

GEORGIA-PACIFIC, L.L.C.; UNION CARBIDE CORPORATION; CERTAINTEED CORPORATION; BEAZER EAST, INCORPORATED; J GRAVES INSULATION COMPANY, INCORPORATED, formerly known as Graves-Aber Insulation Company, Incorporated; TAYLOR SEIDENBACH, INCORPORATED, formerly known as Taylor-Seidenbach, Incorporated,

      Defendants - Appellees

Appeals from the United States District Court
for the Western District of Louisiana

Before REAVLEY, PRADO, and COSTA, Circuit Judges.

COSTA, Circuit Judge:

      This asbestos case requires us to once again wade into the thicket of improper joinder law. 13F Charles Alan Wright et al., Federal Practice and Procedure § 3641.1 (3d ed. 2009) (noting that the Fifth Circuit "embraces a number of district courts that in particular have seen a considerable amount of removal activity that has raised issues of fraudulent joinder"). It also affords us an opportunity to decide a question about removal procedure that district

No. 14-30925

courts often face, but that we have not yet confronted: when a district court refers a motion to remand to a magistrate judge, is that matter a nondispositive one in which the magistrate has the authority to enter an order of remand?  Or is it a dispositive matter in which the magistrate judge may only make a recommendation subject to the district court's *de novo* review?

## I.

William Davidson was diagnosed with mesothelioma in March 2010. Two months later, he filed a lawsuit in Louisiana state court against numerous manufacturer, supplier, and contractor defendants that he contended were responsible for his exposure to asbestos.  Eventually, the case was removed to federal court.  The parties conducted eleven months of discovery, including depositions of Davidson and his coworkers.  Davidson died in October 2011. Davidson's estate and family did not substitute as proper plaintiffs.  Instead, a motion to dismiss was filed and granted without prejudice in October 2012.

Meanwhile, in April 2012, Plaintiffs filed the instant survival and wrongful death action in Louisiana state court bringing similar claims to those in the first suit.  The new suit did, however, add an allegation that Davidson was exposed to asbestos-containing insulation while working at Poulan Chainsaw in Shreveport from 1972 to 1978.  All of the defendants in *Davidson II* were parties to *Davidson I* with the exception of the nondiverse Louisiana Defendants whose joinder is contested in this appeal: J. Graves Insulation Company, Inc. (Graves) and Taylor-Seidenbach, Inc. (Taylor).  Graves and Taylor, according to Plaintiffs, are contractors that frequently installed asbestos insulation during the 1970s in northwest Louisiana.

Defendant Georgia-Pacific timely removed this case on the ground that the Louisiana citizenship of Graves and Taylor should be ignored because these Defendants had been improperly joined.  It pointed out that "substantial

2

discovery was completed" in the first case and that there had been no mention of either Graves or Taylor during that discovery.

Plaintiffs sought remand. In support of their motion, Plaintiffs attached the affidavit of one of their attorneys, who stated, based on her experience that "to the extent Mr. Davidson was exposed to asbestos insulation at Poulan Chainsaw, this insulation was more likely than not supplied, installed[,] and repaired by Graves and Taylor." Georgia-Pacific and a second defendant, CertainTeed, opposed the motion to remand, urging the court to pierce the pleadings and to consider summary-judgment type evidence.

Both sides supported their positions by quoting Davidson's testimony, from two depositions in the first lawsuit, about potential asbestos exposure while working at Poulan Chainsaw. In the first deposition he testified as follows:

> Q: Okay. Do you have any reason to believe that you were exposed to any asbestos or asbestos-contain[ing] products when you worked for Poulan between that 19, you know, 72 or so to 1978 or '79?
>
> A: *It's a possibility* because being out in the plant a lot and there were repairs being done to equipment all the time, some big machinery, and, you know, *it's very possible.*

In the second deposition, Davidson responded again to questions about asbestos exposure at Poulan Chainsaw:

> Q: One of the things that you said was that you saw repairs being done to machinery out at [Poulan]. Can you describe what machinery that was?
>
> A: Drills. You know, industrial-type drills, presses. I really can't remember beyond that.
>
> Q: And do you remember any of this machinery being insulated out at [Poulan]?
>
> A: *I don't recall.*

No. 14-30925

Q: Do you remember insulated pipe being out at [Poulan]?

A: *I don't recall.*

Q: Do you ever remember seeing anybody doing any type of insulation work out at [Poulan]?

A: *No.*

The district court referred the remand motion to a magistrate judge. The magistrate judge issued an order granting the motion to remand, concluding that the allegations in the petition were sufficient to survive a Rule 12(b)(6)-type analysis and that there was not a basis for piercing the pleadings.

Georgia-Pacific and CertainTeed filed "appeals" of the order. The district court disagreed with the magistrate's analysis. After piercing the pleadings, it concluded that Graves and Taylor had been improperly joined. Based on its improper joinder finding, the court dismissed Graves and Taylor with prejudice. After a period of discovery, the remaining Defendants filed a series of motions that resulted in the dismissal of all claims.

## II.

On appeal, Plaintiffs challenge only the denial of their motion to remand.[1] Before we reach the merits of that question, we address a procedural question that a number of other circuits have decided but we have not: does a

---

[1] Graves and Taylor argue that this court lacks appellate jurisdiction over them because the Plaintiffs did not appeal the district court's order dismissing them with prejudice. In their amended notice of appeal, Plaintiffs specified that they were appealing the order denying their motion for remand, but failed to specifically mention the dismissals that were derivative of that ruling. Because Plaintiffs' success on the remand issue that they have clearly preserved would mean the district court lacked jurisdiction to enter any dismissals, we reject this challenge to our appellate jurisdiction.

No. 14-30925

magistrate judge have authority to enter an order remanding a case to state court?[2]

In the trial court proceedings, the parties and both judges operated on the belief that the magistrate judge has that authority. The magistrate judge did not just recommend that the case be remanded, he entered an Order of Remand; Georgia-Pacific and CertainTeed filed "appeals" of that ruling; and the district court treated the magistrate judge's ruling as one involving a nondispositive matter that could be set aside only if "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); FED. R. CIV. P. 72(a). In contrast, rulings by a magistrate judge on dispositive matters—motions to dismiss and for entry of summary judgment being the common examples—are mere recommendations subject to *de novo* review when properly challenged by the losing party. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(3).

This dichotomy of a magistrate judge's authority in civil cases referred by the district court is outlined in the Federal Magistrates Act, 28 U.S.C. § 636, and seeks to enforce the constitutional limits on non-Article III judges. *See* 12 CHARLES ALAN WRIGHT ET. AL., FEDERAL PRACTICE AND PROCEDURE § 3068.2 (3d ed. 2014) ("Constitutional concerns explain the statutory distinction between types of pretrial matters. Motions thought 'dispositive' of the action warrant particularized objection procedures and a higher standard of review because of the possible constitutional objections that only an article III judge

---

[2] At least once, this circuit has reviewed a remand ruling from a magistrate judge that a district court treated as nondispositive. *See In re 1994 Exxon Chem. Fire*, 558 F.3d 378, 383 (5th Cir. 2009) (noting that the district court affirmed the magistrate judge's denial of remand motions in fifteen cases under the "clear error" standard of 28 U.S.C. § 636(b)(1)(A) that governs rulings by magistrate judges on nondispositive matters). But in that case neither the parties nor the court raised an issue about the magistrate judge's authority. *See id.* at 381 (listing the sole issue on appeal as whether the district court lacked subject matter jurisdiction).

may ultimately determine the litigation." (quotation marks omitted)).  The Act lists the following as dispositive pretrial matters in civil cases in which the magistrate judge may only issue a recommendation: motions for injunctive relief, for judgment on the pleadings, for summary judgment, to certify or decertify a class action, to dismiss for failure to state a claim, and to involuntarily dismiss a case.  28 U.S.C. § 636(b)(1)(A).  Although motions to remand are not included in this list, every court of appeals to consider the question has held that they should be treated as dispositive matters in which only the district court may enter an order.  *See Flam v. Flam*, 788 F.3d 1043, 1046–47 (9th Cir. 2015); *Williams v. Beemiller, Inc.*, 527 F.3d 259, 266 (2d Cir. 2008); *Vogel v. U.S. Office Prods. Co.*, 258 F.3d 509, 517 (6th Cir. 2001); *First Union Mortg. Corp. v. Smith*, 229 F.3d 992, 995–96 (10th Cir. 2000); *In re U.S. Healthcare*, 159 F.3d 142, 145–46 (3d Cir. 1998).[3]

We agree with the conclusion of our five sister circuits.  The duty to avoid constitutional difficulties when interpreting a statute warrants a narrow reading of the matters in which a magistrate judge may enter orders without *de novo* Article III review.  *Williams*, 527 F.3d at 264–65 (citing *Gomez v. United States*, 490 U.S. 858, 863–64 (1989)[4]).  Allowing magistrate judges to

---

[3] A number of district courts have held that a motion to remand is a nondispositive matter.  Indeed, "district courts in this circuit have generally adhered to the view that motions to remand are non[]dispositive pretrial matters and have applied the clearly erroneous standard of review." *Credeur v. York Claim Serv.*, 2013 WL 5935477 at *3 (W.D. La. 2013) (citing cases).

[4] *Gomez* is useful for its general point that courts interpreting the Federal Magistrates Act should do so in a manner that avoids constitutional concerns about the exercise of power by non-Article III judges.  490 U.S. at 864 (noting, in interpreting the Act, the "settled policy to avoid an interpretation of a federal statute that engenders constitutional issues if a reasonable alternative interpretation poses no constitutional question").  We do not, however, read it as two courts of appeals have as a holding that the list of dispositive matters in 28 U.S.C. § 636(b)(1)(A) is not exhaustive.  *See, e.g., Flam*, 788 F.3d at 1046 (citing *Gomez* for the proposition that the "Supreme Court has identified some judicial functions as dispositive notwithstanding the fact that they do not appear in the list"); *Williams*, 527 F.3d at 265 (also characterizing *Gomez* as holding that jury selection in felony trials is dispositive despite not

enter remand orders at a minimum approaches the constitutional line because "a remand order is dispositive insofar as proceedings in the federal court are concerned" and thus is "the functional equivalent of an order of dismissal." *See U.S. Healthcare*, 159 F.3d at 145 (noting that the question of subject matter jurisdiction is "at the core of the exercise of federal judicial power"). Treating motions to remand as nondispositive would create a situation in which an Article III judge might never exercise *de novo* review of a case during its entire federal lifespan. And although a remand order is a final disposition only of the jurisdictional question, a merits determination is not a necessary feature of a "dispositive" matter as the statute labels requests for preliminary injunctions and class certification as dispositive. 28 U.S.C. § 636(b)(1)(A).

We note an additional reason, one our sister circuits have not discussed, for treating rulings on motions to remand as dispositive matters.[5] An order of remand like the one the magistrate judge issued "is not reviewable on appeal or otherwise." 28 U.S.C. § 1447(d). Yet the statute and rule governing

being in the statute's list of dispositive matters). The question in *Gomez* was not dispositive versus nondispositive, but whether magistrates had any authority to conduct jury selection in felony cases. 490 U.S. at 860. The relevant statutory language provided that a "magistrate may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States." *Id*. at 863 (quoting 28 U.S.C. § 636(b)(3)). In finding that jury selection in felony cases did not fall within this catch-all provision, the Court noted that if it were within the scope of a magistrate's duties, one would expect jury selection to be a dispositive one enumerated in the statute given that duty's importance. The absence of the jury-selection duty from the enumerated list of dispositive matters thus counseled against including it within the catch-all provision. *Id*. at 873–74. If anything then, *Gomez* attaches significance to the statutory list of dispositive matters. We nonetheless come to the same conclusion in regard to a magistrate judge's authority over motions to remand, for the reasons discussed above, as the courts of appeals that have read *Gomez* differently than we do.

[5] *U.S. Healthcare* discussed some of these concerns *after* holding that the magistrate judge should not have entered an order of remand. 159 F.3d at 145–47. It did so in determining whether that order was appealable or the basis for a petition for mandamus on the ground that the magistrate judge exceeded his authority. *See id*. (concluding that the latter avenue offered relief). We conclude that these difficult issues surrounding appellate review of an order of remand issued by a magistrate judge also inform the initial classification decision.

No. 14-30925

magistrate judge rulings on nondispositive matters provides for an appeal to the district court under the "clearly erroneous or contrary to law" standard. 28 U.S.C. § 636(b)(1)(A); FED. R. CIV. P. 72(a). Classifying motions to remand as dispositive matters on which magistrate judges may enter recommendations but not orders of remand avoids a potential collision between these review provisions. It also avoids a timing problem that would result even if the magistrate-specific review provisions govern a magistrate judge's entry of a remand order: absent a stay, a remand order sends the case back to state court and deprives the federal court of jurisdiction that would allow for district court review. 28 U.S.C. § 1447(c) (noting that the clerk of court should mail order of remand to state court which "may thereupon proceed with such case"); *Dahiya v. Talmidge Int'l, Ltd.*, 371 F.3d 207, 208 (5th Cir. 2004) (concluding that district court's remand order deprived the court of appeals of further federal jurisdiction).[6]

We therefore join the uniform view of the courts of appeals that have considered this question and hold that a motion to remand is a dispositive matter on which a magistrate judge should enter a recommendation to the district court subject to *de novo* review.

---

[6] *Escuadra v. Geovera Specialty Ins. Co.*, 739 F. Supp. 2d 967 (E.D. Tex. 2010), appears to recognize both of these problems. It qualified its holding that a motion to remand is nondispositive by saying that is the case "at least when district-judge review is not foreclosed." *Id.* at 972. It then addressed the practical difficulties of that review by noting that the local rules in that district require a 20-day waiting period after entry of a remand order before the clerk of court transmits a case back to state court. *Id.* at 972 n.3. Of course, not every district has that local rule. And even operating under such a rule, that 20 days would only allow the objecting party to file its appeal with the district judge. In most cases, the district judge would need more time to rule and thus would have to enter a stay. *See also U.S. Healthcare*, 159 F.3d at 144 (noting that even with a Local Rule's 15-day grace period, the district court "treated the remand as effective immediately" because the case was closed the day the order of remand was entered, thus precluding district court review). Working around this problem is not impossible, but its existence informs how we classify a remand matter.

8

## III.

That means we review the district court's ruling as opposed to acting as the second layer of review for the magistrate judge's decision. We review *de novo* the district court's "determination that a party is improperly joined and [its] denial of a motion for remand." *Kling Realty Co. v. Chevron USA, Inc.*, 575 F.3d 510, 513 (5th Cir. 2009). The decision to pierce the pleadings and consider summary judgment-type evidence is reviewed only for abuse of discretion. *La. ex rel. Caldwell v. Allstate Ins. Co.*, 536 F.3d 418, 425 (5th Cir. 2008).

"Improper joinder can be established in two ways: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non[]diverse party in state court." *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 401 (5th Cir. 2013) (internal quotations and alteration omitted).[7]　Only the second situation is before us. The test "is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc).

Our en banc opinion in *Smallwood* sets out the procedure for determining whether, in the absence of actual fraud, a nondiverse defendant was improperly joined. *See Mumfrey*, 719 F.3d at 401. First, a court looks at the allegations contained in the complaint. *See id.* If a plaintiff can survive a Rule 12(b)(6) challenge for failure to state a claim, there is ordinarily no

---

[7] "The Fifth Circuit adopted the terminology 'improper joinder,' . . . instead of the terminology 'fraudulent joinder,' which is 'a term of art' used in other circuits to describe the doctrine that ignores a lack of complete diversity where the plaintiff joins a nondiverse defendant to avoid federal jurisdiction." *Mumfrey*, 719 F.3d at 401 n.14 (internal citation omitted).

improper joinder. *Id.* (citing *Smallwood*, 385 F.3d at 573). When "a complaint states a claim that satisfies 12(b)(6), but has 'misstated or omitted discrete facts that would determine the propriety of joinder . . . the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry.'" *Id.* (quoting *Smallwood*, 385 F.3d at 573). "[T]he decision regarding the procedure necessary in a given case must lie within the discretion of the trial court." *Smallwood*, 385 F.3d at 573.

"The burden of persuasion on those who claim [improper] joinder is a heavy one." *Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003). Accordingly, we view "all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff" and resolve "[a]ny contested issues of fact and any ambiguities of state law" in the plaintiff's favor. *Id.* Moreover, we must "take into account the 'status of discovery' and consider what opportunity the plaintiff has had to develop its claims against the non[]diverse defendant." *McKee v. Kan. City S. Ry. Co.*, 358 F.3d 329, 334 (5th Cir. 2004) (quoting *Travis*, 326 F.3d at 649).

We do not agree with Plaintiffs that the district court abused its discretion in piercing the pleadings and looking to see if evidence had developed in the first case "that would preclude [P]laintiff[s'] recovery against the in-state defendant." *See Smallwood*, 385 F.3d at 573–74. In light of the district court's discretion in deciding whether to pierce the pleadings, it was not error to do so here given the unusual procedural posture of this case that meant there was already a lengthy record at the outset of this second lawsuit. *See Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 309–11 (5th Cir. 2005) (rejecting plaintiff's challenge to court's decision to pierce the pleadings when neither the scope and amount of remand-related discovery nor the length of time court took to consider the evidence was excessive).

We agree with Plaintiffs, however, that the district court erred in applying the improper joinder standard to that record. Although a court may pierce the pleadings and consider summary-judgment type evidence, the standard for finding improper joinder is not the summary judgment standard in which an absence in the plaintiff's proof alone can be fatal. *Travis*, 326 F.3d at 650 n.3 (noting that "[o]n a motion for summary judgment, the plaintiff's lack of evidence in support of her claims, after a sufficient period of discovery, could have a different effect" than at the motion to remand stage, where such lack of evidence is not dispositive). It would make little sense to apply the no-evidence summary judgment standard at the early stages of a case when improper joinder usually arises as the plaintiff typically will have had little opportunity to conduct discovery, hire experts, etc. Rather than a standard in which no evidence on the plaintiff's part may be dispositive, "the test for fraudulent joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant . . . ."[8] *Smallwood*, 385 F.3d at 573. The examples of improper joinder based on "discrete and undisputed facts" outside the pleadings that *Smallwood* provides are consistent with this language requiring a defendant to "preclude" the possibility of recovery:[9] evidence showing that "the in-state doctor defendant

---

[8] In supplemental briefing, Defendants recognize that they must make an initial showing. They characterize the improper joinder standard as requiring that "once a defendant offers evidence of the in-state defendant's non-liability, the plaintiff must respond with contrary evidence."

[9] The improper joinder standard is thus similar to the summary judgment standard that many courts applied before the Supreme Court's 1986 summary judgment trilogy. One of the 1986 cases was, like this one, an asbestos case. The D.C. Circuit denied summary judgment based on its understanding that the summary judgment standard required "that the party moving for summary judgment must prove the absence of any genuine issue of material fact, and that only after the movant has done so must the nonmovant respond with 'specific facts showing that there is a genuine issue for trial.'" *See* Patricia M. Wald, *Summary Judgment at Sixty*, 76 TEXAS L. REV. 1897, 1911 (1998) (explaining *Catrett v. Johns-Manville Sales Corp.*, 756 F.2d 181, 184–85 (D.C. Cir. 1985), and summary judgment practice generally prior to the 1986 trilogy). The Supreme Court reversed the D.C. Circuit,

did not treat the plaintiff," that "the in-state pharmacist defendant did not fill a prescription for the plaintiff patient," that "a party's residence was not as alleged, or any other fact that easily can be *disproved* if not true." *See* 385 F.3d at 573–74 & n.12 (emphasis added) (citing *Travis*, 326 F.3d at 648–49).

*Travis v. Irby*, cited favorably by the en banc *Smallwood* court, *see* 385 F.3d at 573, illustrates the difference between the summary judgment and improper joinder standards. The railroad defendant in *Travis* asked the district court to pierce the pleadings and consider interrogatory responses submitted by the plaintiff. 326 F.3d at 646, 648–50. The plaintiff's responses acknowledged that she did not, at the time, possess facts supporting the petition's allegations that the train engineer failed to keep a proper and reasonable lookout, to take proper precautions under the circumstances, and to brake in time. *Id.* at 649. Characterizing these statements "as admissions that she had no factual basis or evidence in support of her claims against [the engineer]," the district court found improper joinder. *Id.* at 649–50. We reversed, explaining that the "lack of substantive evidence as to the non[]diverse defendant does not support a conclusion that he was [improperly] joined" even though that may support summary judgment. *Id.* at 650 & n3. Instead, "the defendant must put forward evidence that would negate a possibility of liability on the part of [the nondiverse defendant]." *Id.* at 650.

Much of the argument of the removing parties in this case amounts to what *Travis* rejected: "simply pointing to the plaintiff's lack of evidence at this stage of the case." *Id.* at 650 (finding such an argument insufficient). Aside from their arguments regarding Davidson's deposition testimony which we will address shortly, Defendants cite the district court's finding that "there was no

---

holding that summary judgment is warranted when the movant identifies an absence of evidence supporting a claim and the nonmovant fails to identify facts in response. *See id.* at 1911–12 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

mention of either Graves or Taylor" in the *Davidson I* record. They have not, however, identified any evidence from that earlier lawsuit negating a possibility of liability on the part of Graves and Taylor, such as receipts or other business records showing that those businesses did not supply asbestos to Poulan Chainsaw from 1972–1978. *Contrast, e.g., Vaillancourt v. PNC Bank, Nat'l Ass'n*, 771 F.3d 843, 847–48 (5th Cir. 2014) (per curiam) (finding improper joinder established, in case in which plaintiff alleged that defendant had not complied with statutory notice requirements before foreclosing, when defendant produced uncontroverted evidence including certified mail receipt and affidavit indicating notices were sent to plaintiff); *Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242, 250 (5th Cir. 2011) (finding improper joinder established, in case in which plaintiff alleged that defendant wrongfully refused to accept tendered payment for loan in default, when defendant produced uncontroverted evidence that it did not service or originate the loan). With the pleadings pierced, it also would not have been difficult for Defendants to submit affidavits from Graves and Taylor stating that they did not supply Poulan (if that was the case). *Contrast Guillory*, 434 F.3d at 313 (finding improper joinder established, in case where plaintiff alleged defendants breached duty to protect, based on "the self-serving [deposition] testimony of the nondiverse defendant[s] that [they] had no responsibility for safety measures relating to the particular plant explosion" because the plaintiffs did not identify evidence contradicting the defendants' testimony).

We do not believe that the existence of a developed record in the first lawsuit warrants expanding the improper joinder standard to allow the absence of evidence alone to satisfy it. The improper joinder ruling was made before discovery in this case, which had first named Graves and Taylor. *See McKee*, 358 F.3d at 334 ("The district court must also take into account the 'status of discovery' and consider what opportunity the plaintiff has had to

develop its claims against the non[]diverse defendant." (quoting *Travis*, 326 F.3d at 649)).  The district court did not err in considering the record from the first trial, and that record might have revealed evidence of the sort we just mentioned that would disprove Plaintiffs' claims.  But finding an absence of evidence to be controlling when Plaintiffs never had an interest in the first case to develop evidence against Graves and Taylor would be at odds with the limited scope of improper joinder and the defendant's "heavy burden" to establish it.  *Travis*, 326 F.3d at 649.  The record in the first lawsuit did not include, nor would one expect it to, business records relating to Graves, Taylor, or Poulan or testimony from people employed at those companies during the 1970s.  Defendants point out that the defendants in *Davidson I* might have had an incentive to develop such evidence against Graves and Taylor to support contribution claims.  But we have always focused on the plaintiff's opportunity to develop its claims, not other parties' incentives.  And if evidence developed by other parties is relevant, would that extend to earlier cases not even involving the plaintiff?  We refuse the invitation to expand our improper joinder inquiry.

That leaves Davidson's deposition testimony.  The district court found, without explanation, that this testimony supported its finding that Plaintiffs have no reasonable possibility of recovery against Graves or Taylor.  But his June 2010 statement that it was "very possible" that he had been exposed to asbestos at Poulan Chainsaw on its face more than satisfies a "some possibility" standard.  Defendants counter that his testimony a year later, when Davidson said that he never saw anybody doing insulation work at Poulan Chainsaw, and did not recall specific machinery or industrial Poulan equipment being insulated with asbestos, shows that the possibility of any recovery from Graves or Taylor is "merely a *theoretical*" speculation.  *See Ross v. Citifinancial, Inc.*, 344 F.3d 458, 462 (5th Cir. 2003) (holding that

speculation is insufficient).  But accepting as inconsistent his "very possible" versus "I do not recall" answers, we have to resolve the tension in favor of the earlier, stronger statement.  *See African Methodist Episcopal Church v. Lucien*, 756 F.3d 788, 793 (5th Cir. 2014) ("We repeat for emphasis that any contested issues of facts and any ambiguities of state law must be resolved in favor of remand." (internal quotation marks omitted)).  Even if we could credit only Davidson's later testimony—and, thus, limit his personal knowledge with respect to his exposure at Poulan Chainsaw to the "I don't recall" answer—that only demonstrates an absence of evidence to support Plaintiffs' claims.  It does not "preclude [P]laintiffs' recovery against the in-state [D]efendant[s]."[10] *Guillory*, 434 F.3d at 310 (quoting *Smallwood*, 385 F.3d at 573–74).

Finally, although Defendants make much of Plaintiffs' apparent forum manipulation, we have noted that the "motive or purpose of the joinder of in-state defendants is not relevant" when the basis for removal is not "actual fraud" in the pleadings but rather the inability of the plaintiff to recover against the in-state defendant.  *Smallwood*, 385 F.3d at 574.

* * *

We VACATE the judgment and REMAND to the district court for entry of an order remanding the case to state court.

---

[10] We thus need not consider the admissibility of the affidavit submitted by Plaintiffs' counsel.