## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

——————

No. 17-40825

——————

United States Court of Appeals
Fifth Circuit

**FILED**

December 6, 2018

Lyle W. Cayce
Clerk

OSCAR CUMPIAN,

      Plaintiff - Appellant

v.

ALCOA WORLD ALUMINA, L.L.C.; STEPHEN ALVARADO; PALACIOS MARINE & INDUSTRIAL COATINGS, INCORPORATED,

      Defendants - Appellees

——————

Appeal from the United States District Court
for the Southern District of Texas

——————

Before JONES, CLEMENT, and SOUTHWICK, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

The plaintiff appeals from a summary judgment dismissing his suit. The threshold question presented is whether the district court properly denied the motion to remand this action to state court due to the absence of diversity jurisdiction. There was error. We VACATE the judgment and REMAND with instructions that the district court remand the case to state court.

### FACTS AND PROCEDURAL HISTORY

The plaintiff, Oscar Cumpian, appellant here, brought suit for negligence in Texas state court against three defendants. One is Alcoa World Alumina,

No. 17-40825

L.L.C., whose citizenship is determined by that of its members. *Tewari De-Ox Sys., Inc. v. Mountain States/Rosen, Ltd. Liab. Corp.*, 757 F.3d 481, 483 (5th Cir. 2014). In its notice of removal, Alcoa identified five members — three corporations and two other entities — and stated they were citizens of Delaware, Florida, North Carolina, Pennsylvania, and Australia. We find no dispute as to that citizenship. The other defendants, Stephen Alvarado and Palacios Marine & Industrial Coatings, Inc. ("PMIC"), were alleged to be Texas citizens. Alvarado has been dismissed from the suit. The plaintiff Cumpian is a resident of Texas.

Alcoa owns a plant in Port Comfort, Texas where it produces alumina. That product is used to make finished aluminum alloy. Alcoa uses caustic liquids, which Cumpian labels "Caustic Liquor," in the process of making alumina. Alcoa employs safety practices to "verify that equipment is ready for maintenance by ensuring it is properly drained or cleared of" Caustic Liquor. The verification is represented by a pink tag, indicating that the equipment has been drained of all Caustic Liquor. That process is referred to both as Tag/Lock/Verify ("TLV") and as lockout/tagout. Alcoa employees are the only individuals permitted to perform TLV. In particular, contractors at the plant are not permitted to do so. Cumpian's complaint, though, alleges that at the time of the emergency underlying his claim, PMIC was assigned the task of ensuring the tank in question was cleared of Caustic Liquor.

On August 6, 2014, there was a large spill of Caustic Liquor in the Port Comfort plant's tank farm. Cumpian and other employees from Turner Industries (a contractor) were instructed to assist in the cleanup of the Caustic Liquor. Cumpian was first told to help another contractor vacuum up spilled Caustic Liquor from the ground and walkways into the tank farm. Thereafter, a Turner supervisor informed Cumpian in a meeting that he and three others would begin replacing metal disks called "blinds" that were inserted at

No. 17-40825

different locations along the pipes and, depending on their design, either blocked or directed the flow.[1]  In order to remove and replace the blinds, a flange had to be opened.  Cumpian testified that he and his team started changing blinds where there were pink tags.

At one point, Cumpian was standing beneath a pipe that a pink tag indicated had been drained of Caustic Liquor.  One of his co-workers pried open the flange to access the blind.  Caustic Liquor was in fact in the pipe.  It ran out and onto Cumpian's right arm and leg, causing chemical burns requiring hospital treatment.

Cumpian filed suit in Texas state court on October 8, 2015, alleging claims for negligence against Alcoa, Alvarado, and PMIC.  Alcoa removed the case to federal court on November 6, 2015, asserting diversity jurisdiction under 28 U.S.C. § 1332(a), and claiming that Alvarado and PMIC had been improperly joined.  On December 28, Cumpian filed a motion for remand, arguing that Alcoa failed to establish Cumpian's citizenship and that PMIC had not been improperly joined.  The district court denied the motion on January 7, 2016, finding that PMIC was not a proper party because the court could not "reasonably predict that Cumpian will recover" from it.

On August 2, 2017, the district court issued a brief opinion that granted summary judgment to Alcoa.  The district court also found Cumpian had articulated "no facts" as to PMIC or Alvarado, therefore dismissing them for "failure to state a claim."  On August 2, 2017, the district court entered judgment that Cumpian take nothing.  The next day, Cumpian filed a notice of appeal.

---

[1] A "slip blind" is a solid disk that shuts off the flow in a pipe.  A "Dutchman blind" is a disk with a hole in the middle that allows for a flow.  Cumpian believed that he and the other workers were swapping blinds to allow for Caustic Liquor to flow out of some of the tanks that had overflowed.

3

No. 17-40825

On appeal, Cumpian challenges the district court's refusal to remand and its grant of summary judgment to Alcoa. Cumpian claims that the district court erred by applying the wrong test for improper joinder, and that the case should have been remanded to state court for lack of diversity jurisdiction. Cumpian also presents issues on the merits of the summary judgment. Because we conclude that the court erred in its refusal to remand the case to state court, we do not reach these other issues.

## DISCUSSION

Joinder of a party solely for the purpose of blocking jurisdiction based on diversity may be established by showing (1) actual fraud in the pleadings or (2) the "inability of the plaintiff to establish a cause of action against the nondiverse party in state court." *Davidson v. Georgia-Pacific, L.L.C.*, 819 F.3d 758, 765 (5th Cir. 2016) (quoting *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 401 (5th Cir. 2013)). Actual fraud has not been claimed. At issue here is the second situation, which nonetheless is also labeled, at times, "fraudulent joinder." *See Travis v. Irby*, 326 F.3d 644, 648 (5th Cir. 2003). We will instead use the term "improper joinder." Our issue "is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc).

Here, the district court held there was improper joinder. We give *de novo* review to that decision. *Davidson,* 819 F.3d at 765. On a motion to remand, the burden of persuasion is on the party claiming improper joinder. We view "all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff." *Travis,* 326 F.3d at 649. Indeed,

4

our initial focus must be on the complaint. *Mumfrey*, 719 F.3d at 401. The court should apply a Federal Rule of Civil Procedure 12(b)(6) standard; if the complaint is sufficient to state a claim, there is no improper joinder. *Id.*

Alcoa argues we should move beyond a review of the complaint alone. When removing this case to federal court, it claimed PMIC, the non-diverse party, was improperly joined. Alcoa invokes this analysis: "where a complaint states a claim that satisfies 12(b)(6) but has 'misstated or omitted discrete facts that would determine the propriety of joinder . . . the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry.'" *Id.* (quoting *Smallwood*, 385 F.3d at 573). The summary inquiry determines if there are "discrete and undisputed facts that would *preclude* plaintiff's recovery against the in-state defendant." *Smallwood*, 385 F.3d at 573-74 (emphasis added). The court is to analyze "whether the defendant has demonstrated that there is no possibility of recovery." *Id.* at 573. The district court took the step of looking beyond the pleadings and concluded there was improper joinder.

Using that framework, we first review the allegations in the complaint to see if Cumpian alleged sufficient facts to state a plausible claim for relief against PMIC. We review these allegations in the light most favorable to Cumpian, adopting inferences in his favor. *See Davidson*, 819 F.3d at 765. Cumpian alleges that PMIC was a contractor that worked at the Alcoa Port Comfort facility with the duties of "monitoring, maintaining, draining and clearing tanks and blinds." Cumpian alleges that at the time of the accident, PMIC was working at the facility on storage tanks and was assigned the task of draining the subject tank or blind and clearing it of hazardous substances. Cumpian alleges he was injured because a tank that still contained Caustic Liquor had been tagged as being cleared. Cumpian specifically alleges that PMIC failed "properly [to] isolate and drain the subject tank and/or blind" and failed to "warn [Cumpian] of the dangerous condition."

Alcoa does not argue here that Cumpian's complaint fails to state a claim upon which relief could be granted. In the absence of any contrary argument, we therefore hold that Cumpian has stated a claim upon which relief could be granted. Instead, Alcoa devotes its argument to the evidence produced during the summary inquiry. We must decide if the evidence demonstrated that Cumpian had "no possibility of recovery." *Id.* at 766.

The district court's assessment of the evidence was that "Cumpian does not show facts to support that . . . [PMIC] owed him a duty." The district court seemingly relied in part on Alcoa's declaration, which stated that contractors are not permitted to perform TLV, *i.e.*, the examination of the pipes for Caustic Liquor. That means, Alcoa argues on appeal, that Cumpian had no evidence that PMIC performed any role in the allegedly negligently tagged pipe that actually contained Caustic Liquor. PMIC therefore owed no duty to Cumpian, and Cumpian could not recover from PMIC.

On a question of improper joinder at the early stage of a case, it is error to use the no-evidence summary judgment standard because the determination is being made before discovery has been allowed. *Id.* Instead, the evidence that is dispositive on the *Smallwood* inquiry are the facts that could be easily disproved if not true. *Id.* To prevail on its improper joinder claim, a "defendant must put forward evidence that would negate a *possibility* of liability on the part of [the nondiverse defendant]." *Id.* at 767 (quoting *Travis*, 326 F.3d at 650) (emphasis added) (modifications in original). Cumpian's lack of affirmative evidence is not fatal to his claim against PMIC at the improper-joinder stage. Alcoa had the burden.

To be clear, Alcoa's affidavit stated that no contractor was permitted to conduct TLV, including PMIC. It also stated that Cumpian's claim that PMIC performed TLV was "false." A conclusory statement that a claim is false, though, is not a "discrete and undisputed fact[]." *Smallwood*, 385 F.3d at 573.

When analyzing whether a discrete and undisputed fact precludes the possibility of recovery, we are mindful of what *Smallwood* identified as the prototypical cases: "the in-state doctor defendant did not treat the plaintiff patient, the in-state pharmacist defendant did not fill a prescription for the plaintiff patient, [or] a party's residence was not as alleged." *Id.* at 574 n.12. Alcoa has done no more than present evidence that it prohibits contractors like PMIC from performing TLV. Such prohibitions at this point in the case, though, simply indicate the standard rules of the workplace. Policies, guidelines, or any number of restrictions might be ignored, particularly in emergency situations. Alcoa's claim that contractors are "not allowed" to perform TLV is not comparable to the examples in *Smallwood*, such as a doctor's never having treated a plaintiff.

It was Alcoa's burden to negate the possibility that PMIC's negligence contributed to Cumpian's injuries. Its affidavit failed to do so. We conclude that PMIC was not improperly joined, and the parties are not completely diverse. The district court lacked jurisdiction.

We VACATE the judgment of the district court and REMAND to that court with instructions to remand the case to the Texas state court from which it came.